25470. WOODS *v.* THE STATE.

DECIDED MAY 27, 1936.

*Strozier & Gower, J. W. Dennard,* for plaintiff in error.
*Allan C. Garden, solicitor-general,* contra.

GUERRY, J. The defendant was indicted, tried and convicted of violating Code of 1933, § 26-6905, which provides that "Any person who shall pursue his business or the work of his ordinary calling on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." His motion for new trial contained the grounds usual in such cases and also six special assignments, in proper form. The indictment read substantially

that he "did . . pursue and carry on his business and the work of his ordinary calling on the Lord's day, said business and work of his ordinary calling being the maintenance, operation and carrying of [on?] a motion picture for which an admission fee and price is charged, and not being works of necessity or charity."

We have carefully studied the evidence given at the trial, and we need go no further than the defendant's own statement to the jury to sustain his conviction. Under the law as it is written, it bespeaks his guilt. After stating to the jury that the operation of Sunday motion pictures was first originated, sponsored and promoted by the American Legion and that the "net proceeds" were "used by them" in a worthy charitable cause, he stated: "The question of the erection of a more adequate hospital in Cordele and a more complete hospitalization for the poor and needy of our county . . I appeared before the city commission and stated to the gentlemen in charge of the affairs of the city that if it was agreeable to all other parties concerned and interested in the charitable cause of relieving the sick and suffering, I would turn over to the city officials the proceeds of these Sunday pictures to be dedicated to the hospital fund. After a complete discussion of the matter this suggestion was approved and adopted by the city commission. This was some six months ago, and since that time the net proceeds from the funds arising from the Sunday pictures have been turned over to the city each month and used by the city officials for the charitable purposes selected and designated by them. I wish to state further that in order to relieve the city of the expense of furnishing ticket takers and checkers of these Sunday shows, as was done by the American Legion while they received these funds, I agreed to furnish all the labor and help in the operation of these shows and turn over the proceeds to the city. I gave the city officials a frank and candid statement of the costs of these pictures and other overhead expense of the operation of the show, and explained to the city commission that some of these pictures were operated at a loss and the profits from them varied from week to week, depending upon weather conditions and other circumstances, but that I would undertake to operate the shows as economically as possible, and I would see that the city received from the proceeds of these funds a minimum amount of $100 per month for the first six months, and later

$125 per month for the balance of the year, whether the shows earned that amount or not. I have turned over to the city this amount each month in compliance with this agreement, but the net proceeds of the Sunday pictures during these months has not amounted to this sum. In other words, I have dedicated to the cause of charity in co-operation with the City of Cordele, more than the net proceeds of these Sunday shows." Thus the defendant admits the operation of his ordinary business on Sunday. There is no justification, in the eyes of the law, in the fact that the defendant donated the "net proceeds" of his business on that day to the city for worthy charities, or the fact that his donations to the city may have equalled more than the net proceeds. This has been the express ruling of the Supreme Court in *Thompson* v. *Atlanta,* 178 *Ga.* 281 (172 S. E. 915), where the case of *Albany Theatre* v. *Short,* 173 *Ga.* 121 (159 S. E. 688), was distinguished.

We are not called upon to adjudge of the philosophy or the reasonableness or unreasonableness of the law at hand or the motives which may have induced it. The crime for which the defendant stands convicted is not one involving moral turpitude. His purpose was to the betterment of his less fortunate fellow beings—a most commendable purpose; however in going about doing good, he has been guilty of a plain infraction of our written law, an evil adjudged more necessary to be eradicated than allowed, in the betterment of our civilization. From what we have said it follows that the verdict was demanded by the evidence, and that the errors, if any, of the trial judge, can be of no consequence.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*